**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**RIVES NEBLETT** **PLAINTIFF**

**V.** **CAUSE NUMBER: 4:26-cv-00158-JDM-JMV**

**MINNESOTA LIFE INSURANCE COMPANY, et al.** **DEFENDANTS**

# MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO REMAND AND DENYING REMAND-RELATED DISCOVERY

They say timing is everything. And here, the *timing* of defendant Jim Nash's relocation from Mississippi to Alabama prevents this Court from exercising diversity jurisdiction.

On July 24, 2026, Mississippi citizen Rives Neblett filed suit against Nash and two others. And Nash admits that on July 24, 2026, he was still in the process of moving from Mississippi to Alabama. Indeed, just three days later, July 27, 2026, Neblett's process server found Nash at his Mississippi home. So this Court cannot say that it is clear that Nash was an Alabama citizen when this suit was filed. This leaves Nash's notice of removal based on diversity of citizenship in doubt. And when this Court's subject matter jurisdiction is in doubt, it must remand.

To salvage removal, out-of-state defendant Minnesota Life Insurance Company filed its own notice. This removal notice urged an alternative basis for diversity jurisdiction—Nash's alleged improper joinder. Minnesota Life insists any potential claim Neblett had against Nash should have been filed long ago. And it asks for jurisdictional discovery to prove it. But the purpose of jurisdictional discovery is to uncover discrete and undisputed facts omitted from or misstated in the complaint. It's not to push ahead and test the merits of the claims against the non-

diverse defendant, hoping to defeat removal. Viewed favorably, Neblett's claims against Nash are *possibly* meritorious. And that is all it takes to defeat an improper-joinder claim.

Because Nash is a proper defendant who has not shown his citizenship differed from Neblett's when this action was filed, this Court lacks diversity-based subject matter jurisdiction.

Therefore, this case is **REMANDED**.

## Background Facts & Procedural History

Neblett, a Mississippi resident, filed this action in Bolivar County Circuit Court on July 24, 2026. [2] He brings six claims based on Mississippi common law.

His complaint named three defendants. Two are undisputed citizens of different states. Minnesota Life, as its name suggests, is a Minnesota citizen. And Robert W. Bailey, who has yet to be served or otherwise weigh in, is a Tennessee citizen. But according to the complaint, the third defendant, Nash, is a Mississippi citizen—just like Neblett.

### I. Nash's Notice of Removal

Nash disputes his Mississippi citizenship. After he was served a copy of the complaint at his Brandon, Mississippi home, Nash removed this action to federal court. [1] His reason for removal was diversity jurisdiction.

Nash claims he had moved to Alabama mere weeks before Neblett filed suit. In his affidavit supporting removal, he asserts that his daughter closed on an Alabama home on June 12, 2026. And Nash's plan was to live there.

But according to Nash, "[m]oving to Alabama was not a one-day process." [1-2] "Since June 12, 2026, [Nash has] prepared the house for habitation." [1-2] Nash claims he started staying overnight in the Alabama home, cleaning, painting, doing yard work, and repairing plumbing. He kept clothes and toiletries there. But he did not move his remaining household possessions until

August 3, 2026. Nash suggests he was back in Mississippi tying up loose ends when he was served process at his Mississippi home. He insists that before July 24, 2026—the date Neblett filed suit—he had already notified his bank, credit card company, and employer of his new Alabama address. [12-1] And on July 24, he ordered an Alabama car tag. [12-1]

In response, Neblett filed a motion to remand. [6] As Neblett sees it, by Nash's own description, Nash's relocation was *still underway* on July 24—so he had not yet changed his domicile to Alabama. As support, Neblett submits his process server's affidavit. He attested that three days after the complaint was filed, on July 27, he personally found Nash exactly where the complaint alleged he could be found—his Brandon, Mississippi home. [7-1]

## II. Minnesota Life's Notice of Removal

Perhaps doubting Nash could prove he changed his domicile before this suit was filed, Minnesota Life chimed. It filed its own notice of removal based on its alternative suggestion that Nash had been improperly joined to defeat diversity jurisdiction. [16] Specifically, Minnesota Life asserts the statute of limitations bars recovery against Nash.

To garner evidence for its improper-joinder theory, Minnesota Life has asked for remand-related jurisdictional discovery. [17] Specifically, it requests permission to depose Neblett and Bailey about who knew what and when. And after that, it suggests it will submit written requests. It asks this Court to hold off ruling on the remand issue until that discovery is complete.

This prompted Neblett to file a second motion to remand—this one aimed at Minnesota's improper-joinder theory. [19] Neblett insists not only was this alternative removal notice procedurally improper but it also substantively fails. And the reason it fails is that it is not a true improper joinder claim. Instead, it is a merits-based challenge to Neblett's claims against Nash.

So there are three removal-related motions before the Court—Neblett's Motion to Remand [6] aimed at Nash's removal notice, Minnesota Life's Motion for Remand-Related Discovery [17], and Neblett's second Motion to Remand [19] challenging Minnesota Life's alternative removal notice.

**Removal Standard**

The burden to justify removal is squarely on Nash and Minnesota Life. And there is a presumption against federal subject matter jurisdiction that the party bringing the action to federal court must rebut. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). "It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation." *Id.*

The United States Code does permit a civil defendant to remove a state court action to federal district court. But removal is only permitted if the federal court has original jurisdiction. 18 U.S.C. § 1441(a). And under 18 U.S.C. § 1332(a)(1), this court has original jurisdiction over any civil case "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" Here, the amount in controversy is not at issue and easily clears that jurisdictional hurdle. What is at issue is Nash's citizenship and whether he too—like Bailey and Minnesota Life—is a citizen of a different state than Neblett.

More precisely, the issue is Nash's citizenship on July 24, 2026—the date Neblett filed suit. This is because "diversity of citizenship must exist *at the time the action is commenced*." *Coury*, 85 F.3d at 248 (emphasis added) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)).

If Nash was an Alabama citizen on July 24, 2026, there is complete diversity and thus original subject matter jurisdiction. But if Nash was not yet an Alabama citizen on July 24, 2026, then the question becomes was he properly joined as a defendant. If Nash was still a Mississippi citizen and he was properly joined, then there is no diversity-based jurisdiction. And removal was improper. *See* 18 U.S.C. § 1441(b)(2).

**Discussion**

**I. Nash has not clearly shown he was an Alabama citizen on July 24, 2026.**

The Court begins with the contested issue of Nash's citizenship.

To reiterate, the burden falls on Nash—as removing defendant—to show removal was proper. *Peters v. Metro. Life Ins. Co.*, 164 F. Supp. 2d 830, 833 (S.D. Miss. 2001). When jurisdiction over a removed case is challenged, a district court "may retain jurisdiction only where its authority to do so is clear." *Id.* at 832 (quoting *Gorman v. Abbott Lab'ys*, 629 F. Supp. 1196, 1203 (D.R.I. 1986)). And here, it is not clear that Nash was an Alabama citizen by July 24, 2026.

For diversity purposes, citizenship is generally synonymous with domicile. *Coury*, 85 F.3d at 249. And "[t]here is a presumption of continuing domicile whenever a person relocates." *Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003) (citing *Coury*, 85 F.3d at 250). Nash presents evidence that he was in the *process* of acquiring a new domicile in Alabama. But by his own admission, he had not finished that process by July 24, 2026.

Nash insists it was enough that by that point he had taken "concrete steps" to relocate to Alabama. But "[a] person's domicile persists until a new one is acquired or it is clearly abandoned." *Coury*, 85 F.3d at 250. And by July 24, Nash had neither fully acquired residency in Alabama nor clearly abandoned his Mississippi home. Indeed, on July 27, just three days after Neblett filed suit, Nash was found and served at the exact Mississippi address where the complaint

said he lived. And even Nash admits he did not move his possessions out of this home until the following week.

"A change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely[.]" *Id.* And "once presence in the new state and intent to remain are met, the new domicile is instantaneously established." *Acridge*, 334 F.3d at 448 (citing 15 MOORE'S FEDERAL PRACTICE, § 102.34[10] (3d ed. 2001)). But here, Nash was found and physically present at his Mississippi home mere days after this suit was filed. So it is hard to say he intended to remain in Alabama indefinitely at the same point he concedes he was still back and forth preparing for his move.

Admittedly, this is close call. But when it comes to this Court's limited jurisdiction, close isn't enough—it must be *clear*. *Peters*, 164 F. Supp. 2d at 833. And "when doubt exists as to the right to removal in the first instance, ambiguities are to be construed against removal." *Id.* That means any doubt about when Nash changed his domicile must be construed against removal.

Again, it is just not clear Nash was a citizen of a different state than Neblett when Neblett sued him, Bailey, and Minnesota Life. So the Court has no choice but to find his diversity-based notice of removal was improper.

## II. Nash was not improperly joined.

The same is true for Minnesota Life's improper-joinder-based notice. It does not salvage diversity-based jurisdiction because it wholly fails to prove Nash was improperly joined.[1]

---

[1] Because Minnesota Life does not meet its burden to prove improper joinder, the Court side-steps Neblett's procedural attacks against the insurer's alternative notice of removal and grants Neblett's second motion to remand on its merits.

Minnesota Life tries to establish improper joinder by showing Neblett's inability to establish a cause of action against Nash, the non-diverse party.[2] The test for this type of improper-joinder claim is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant." *Smallwood*, 385 F.3d at 573. Minnesota Life asserts that, based on *when* Nash participated in the alleged torts and what Neblett should have known, any recovery against Nash would be statutorily time-barred.

But Neblett's complaint alleges Nash's continued participation in the management of the life insurance policy—the policy at the heart of Neblett's claims. Neblett also argues latent injury and fraudulent concealment tolled the statute of limitations.

When "determin[ing] the validity of an improper joinder claim, [the Court] 'must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" *Guillory*, 434 F.3d at 308 (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981)). Importantly, the Court does "not determine whether the plaintiff will actually or even probably prevail on the merits of the claim." *Id.* at 309. Rather, the Court "look[s] only for a *possibility* that the plaintiff might do so." *Id.* (emphasis added). And here, viewing Neblett's factual allegations favorably, there is a possibility the statute of limitations does not, under these facts, bar Neblett's claims against Nash. *See Smallwood*, 385 F.3d at 573 ("Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."). So Minnesota Life has not met its burden of proof.

[2] "There are two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005) (quoting *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). Minnesota Life attempts the second way—the first way is not at issue.

Minnesota Life asks the Court to stay its remand ruling and allow it to conduct jurisdictional discovery to meet its burden. But that ask is not appropriate here. Minnesota Life has not proposed "sharply tailored questions" aimed at discovering "discrete and undisputed" jurisdictional facts that Neblett misstated or omitted from the complaint. *Id.* at 573-74. Instead, Minnesota Life wants to depose Neblett and Bailey about the crux of this lawsuit—questioning what Neblett knew or should have known and when he knew or should have known it. That is not what jurisdictional discovery is for. *Id.* ("Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand . . .").

The motion for jurisdictional discovery is denied. The Court declines to push the pause button on Neblett's remand motion just so Minnesota Life can take a deep dive into the merits.

Improper-joinder analysis is a "summary inquiry" into a federal "court's diversity jurisdiction by a *simple and quick exposure* of the chances of the claim against the in-state defendant alleged to be improperly joined." *Id.* (emphasis added). It is not a resolution on the merits. *Id.* "Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden" to prove improper joinder. *Id.* at 574.

Because Minnesota Life has not carried its burden to prove Nash, the non-diverse defendant, was improperly joined, the Court grants Neblett's motions to remand.

## Conclusion

The Motions to Remand [6, 19] are **GRANTED**. The Motion for Discovery [17] is **DENIED**. A separate remand order will issue this day.

**SO ORDERED**, this 13th day of November, 2026.

/s/ James D. Maxwell, II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI